**SEYFARTH SHAW LLP**
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Paul J. Leaf (SBN 261949)
pleaf@seyfarth.com
Justin J. Jackson (SBN 333687)
jujackson@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant
JILL ACQUISITION LLC

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA SERRIEH, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>JILL ACQUISITION LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>          Defendants. | **CLASS ACTION**<br><br>Case No.<br><br>**DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL**<br><br>[Placer County Superior Court Case No. S-CV-0049697]<br><br>Complaint Filed:  January 6, 2023<br>Trial Date:        None Set |

91923496v.4

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DINA SERRIEH AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Jill Acquisition LLC ("Defendant" or "J.Jill") files this Notice of Removal, asserting both (1) original federal question jurisdiction pursuant to 28 U.S.C. § 1331 and (2) federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453. The Notice of Removal is intended to remove the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of Placer, to the United States District Court for the Eastern District of California. As explained below, this Court has original jurisdiction over the instant action pursuant to both original federal question jurisdiction and CAFA.

## I.    BACKGROUND

1.      On January 6, 2023, Plaintiff Dina Serrieh ("Plaintiff") filed a class action complaint in the Superior Court of State of California for the County of Placer, titled "*DINA SERRIEH, an individual, on behalf of herself and on behalf of all persons similarly situated vs. JILL ACQUISITION LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,*" Case No. S-CV-0049697 ("Complaint"). The Complaint asserts nine causes of action as follows: (1) Unfair Competition in Violation of California Business & Professions Code §§ 17200, *et seq*.; (2) Failure to Pay Minimum Wages in Violation of California Labor Code §§ 1194, 1197, and 1197.1; (3) Failure to Pay Overtime Wages in Violation of California Labor Code § 510; (4) Failure to Provide Required Meal Periods in Violation of California Labor Code §§ 226.7 and 512; (5) Failure to Provide Required Rest Periods in Violation of California Labor Code §§ 226.7 and 512; (6) Failure to Provide Accurate Itemized Wage Statements in Violation of California Labor Code § 226; (7) Failure to Reimburse Employees for Required Expenses in Violation of California Labor Code § 2802; (8) Failure to Provide Wages When Due in Violation of California Labor Code §§ 201, 202, and 203; and (9) Failure to Pay Sick Pay

91923496v.4

Wages in Violation of California Labor Code §§ 201-204, 233, and 246.  (Ex. A—Complaint, ¶¶ 8-118.)

2.    On January 18, 2023, Defendant's registered agent for service of process in California received, via process server, a packet containing the Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment; Alternative Dispute Resolution Information Package; and Guidelines for Complex Civil Departments.  A true and correct copy of the packet received by Defendant is attached as **Exhibit A**.

3.    On February 15, 2023, Defendant filed its Answer to the Complaint in the Superior Court of the State of California for the County of Placer.  A true and correct copy of the Answer is attached as **Exhibit B**.[1]

4.    Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A and B, in this action prior to filing this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

5.    Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons.  28 U.S.C. §1446(b)(1) ("The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . .").

6.    The service of process that triggers the 30-day period to remove is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

---

[1] As of the filing of this Notice, a conformed copy of the Answer is not yet available.

91923496v.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.      Defendant's Notice of Removal is timely, because it is filed on February 16,

2023, which is within 30 days of service of the Summons and Complaint on January 18,

2023.  28 U.S.C. § 1446(b); Cal. Code Civ. Proc. § 415.10 ("A summons may be served

by personal delivery of a copy of the summons and of the complaint to the person to be

served.  Service of a summons in this manner is deemed complete at the time of such

delivery."); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48

(1999) ("[W]e hold that a named defendant's time to remove is triggered by simultaneous

service of the summons and complaint . . . .").

## III.    REMOVAL UNDER FEDERAL QUESTION

### A.      This Court Has Federal Question Jurisdiction Based On Claims Arising Under The Fair Labor Standards Act

8.      A case presents a "federal question" and provides grounds for removal if a

claim "'aris[es] under the Constitution, laws, or treaties of the United States.'"  *Sullivan*

*v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C.

§ 1331).

9.      Plaintiff's Complaint presents original federal questions under the federal

Fair Labor Standards Act ("FLSA"), which independently confers this Court with

original jurisdiction over this action.  (Ex. A—Complaint, ¶¶ 49 and 51; *see also*

Complaint, ¶ 9.)

10.     Under Plaintiff's First Cause of Action for Unfair Competition, she alleges

that "DEFENDANT has engaged and continues to engage in a business practice which

violates . . . the Fair Labor Standards Act and federal regulations promulgated

thereunder. . . ." (Ex. A—Complaint, ¶ 49.)  Under Plaintiff's Third Cause of Action for

Failure to Pay Overtime Wages, she also alleges that Defendant "failed to provide Fair

Labor Standards Act overtime wages due for overtime worked as a result of failing to

include non-discretionary incentive compensation into their regular rates of pay for

purposes of computing the proper overtime pay due to a business practice that cannot be

justified. . . ." (Ex. A—Complaint, ¶ 51.)  Likewise, Plaintiff's Fourth and Fifth Causes

3

of Action also allege Defendant failed to pay meal and rest break premiums at the "regular rate of pay" in violation of federal law. (Ex. A—Complaint, ¶¶ 9 and 10; ("State and federal law provides that employees must be paid overtime and meal and rest break premiums at one-and-one half times their 'regular rate of pay.'"; "DEFENDANT failed to include the incentive compensation as part of the employees' 'regular rate of pay' for purposes of calculating overtime pay and meal and rest break premium pay.").) And throughout the rest of her Complaint in each section related to a distinct cause of action, Plaintiff incorporates the earlier parts of her Complaint that contend federal law has been violated. (Ex. A—Complaint, ¶¶ 61, 75, 90, 94, 98, 102, 106, 114 ("Plaintiff . . . reallege[s] and incorporate[s] by this reference, as though fully set forth herein, the prior paragraphs of this Complaint.").)

11. Accordingly, Plaintiff's First, Third, Fourth, and Fifth Causes of Action explicitly present federal questions over which this Court has original jurisdiction, while all of her remaining claims incorporate federal law by reference. 28 U.S.C. § 1331; *see also Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1074 n.1 (9th Cir. 2016) ("Because [plaintiff] pleaded a claim under the FLSA, a federal law, the district court also had federal question jurisdiction [over alleged 'violations of California employment laws']"); *Helmer v. Brandano*, 875 F.2d 318 (9th Cir. 1989) ("district court had federal question jurisdiction over [plaintiff's] first action under 28 U.S.C. § 1331 (1982) and the Fair Labor Standards Act"); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 859 (9th Cir. 1979) ("Both the claim under the FLSA and the claim based on a breach of the collective bargaining agreement present federal questions"); *Helton v. Factor 5, Inc.*, 2014 WL 4243540, at *1 (N.D. Cal. Aug. 27, 2014) ("[The] instant action was commenced in the Superior Court of California, County of Marin. After the Plaintiffs filed an amended complaint adding federal claims under the Fair Labor Standards Act ('FLSA'), 29 U.S.C. § 216, the individual Defendants removed the action to this Court on the basis of federal question jurisdiction.").

91923496v.4

1

**B.    This Court Has Supplemental Jurisdiction Over Plaintiff's Related State Law Claims**

12.    Plaintiff asserts the remainder of her claims under the California Labor Code, the California Business and Professions Code, and a California Wage Order. Plaintiff's claims under California law arise from, relate to, and emanate from the exact same employment relationship between Plaintiff and Defendant that is the subject of the federal question claims, and raise the exact same issues as to whether Plaintiff and the potential class were properly compensated for all hours worked at the correct rates of pay, properly provided meal and rest breaks, properly compensated for any meal and rest break violations with premium pay at the correct rate, provided correct sick pay, provided correct reporting time pay, provided accurate and itemized wage statements, reimbursed for necessary business expenditures, and timely paid all wages during employment and upon separation of employment.

13.    Therefore, the California and federal claims are so related that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Plaintiff's claims under California law pursuant to 28 U.S.C. § 1367(a).  *See Geanta v. Compass Health, Inc.*, 673 F. App'x 768, 769 (9th Cir. 2017) (reversing dismissal of related state law claims on grounds that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Garcia v. NRI USA, LLC*, 2018 WL 2315962, at *3 (C.D. Cal. May 21, 2018) (supplemental jurisdiction proper where complaint alleged FLSA claim and "state-law claims under the California Labor Code and Unfair Competition Law"; "a court can exercise supplemental jurisdiction over state-law wage-and-hour class claims when original jurisdiction is present due to an FLSA claim"); *Jarrell v. Amerigas Propane, Inc.*, 2017 WL 8314661, at *1 (N.D. Cal. Aug. 4, 2017) ("Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).  The Court has supplemental jurisdiction over Plaintiff's state-law claims" for meal period, rest period, overtime,

1    minimum wage, and wage statement violations."); *Lowenthal v. Quicklegal, Inc.*, 2016

2    WL 5462499, at *5 (N.D. Cal. Sept. 28, 2016) ("court has federal-question jurisdiction

3    over [plaintiff's] FLSA claim and supplemental jurisdiction over the others—all of which

4    relate to his alleged employment and non-payment, and thus are 'so related' to

5    his FLSA claim"); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1058 (C.D. Cal.

6    2014) (noting "the court's federal question jurisdiction based on

7    [plaintiff's] FLSA claim" and supplemental jurisdiction for claims under [the] California

8    Labor Code"); *Hernandez v. Martinez*, 2014 WL 3962647, at *3 (N.D. Cal. Aug. 13,

9    2014) ("Plaintiffs assert claims under the FLSA and various California wage and hour

10   statutes. . . .  [A] FLSA cause of action raises a federal question, and the Court properly

11   may exercise subject matter jurisdiction over the FLSA cause of action.  Because the

12   state law claims arise out of the same factual allegations as the FLSA cause of action, the

13   Court exercises supplemental jurisdiction over those claims"); *Milton v. TruePosition,*

14   *Inc.*, 2009 WL 323036, at *1 (N.D. Cal. Feb. 9, 2009) ("The complaint alleges one claim

15   for relief under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and five

16   claims for relief under various California laws. . . .  Plaintiffs allege violations of various

17   employment laws, claiming that defendant failed to pay plaintiffs for all the hours they

18   worked, failed to pay overtime, and failed to provide meal and rest periods. . . .  [T]here

19   is federal question jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331,

20   and . . . the Court has . . . supplemental jurisdiction [of the California claims] under 28

21   U.S.C. § 1367").

22        14.    This Court retains original jurisdiction over the entire civil action here

23   because only one claim is needed for original jurisdiction over an entire civil action.  *See*

24   *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 559 (2005) ("[i]f the court

25   has original jurisdiction over a single claim in the complaint, it has original jurisdiction

26   over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it

27   has jurisdiction comprises fewer claims than were included in the complaint"); *Saxe v.*

28   *Cast & Crew Payroll, LLC*, 2015 WL 4648041, at *8 (C.D. Cal. Aug. 4, 2015) (same).

91923496v.4

## IV.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

15.    CAFA provided a separate and independently sufficient basis to remove this case to federal court.  Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  As set forth below, each of these three requirements are met and, thus, this action is properly removable under 28 U.S.C. § 1441(a).

### A.    The Class Action Includes Approximately 670 Potential Class Members

16.    A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

17.    Plaintiff defines the proposed class to include "all individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court."  (Ex. A—Complaint, ¶ 4.)  Based on the filing date of the Complaint on January 6, 2023, the proposed class period covers the time period of **January 6, 2019, to the present**.

18.    As of January 26, 2023, based on the proposed class definition, **there are approximately 670 current and former non-exempt employees in the class**. (Declaration of Scott Lesien in Support of Defendant's Notice of Removal ("Lesien Decl."), ¶ 14.)  Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 potential class members under CAFA.

///

///

///

91923496v.4

**B.    Plaintiff And Defendant Are Minimally Diverse**

19.    CAFA requires only minimal diversity to establish federal jurisdiction.  This means at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).

20.    A party's citizenship is determined at the time the lawsuit was filed.  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

21.    In the instant case, Plaintiff and other currently-employed potential class members are citizens of the State of California, which is different from the citizenship of the sole Defendant (the Commonwealth of Massachusetts and the State of Delaware).  (Lesien Decl., ¶¶ 6-12.)

**1.    Plaintiff Is A Citizen Of California.**

22.    For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, "[one's] permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return." *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

23.    In this case, Plaintiff concedes that she "was employed . . . in California." (Ex. A—Complaint, ¶ 3.)

24.    Additionally, Plaintiff provided Defendant with her home address during the course of her employment for purposes of her payroll checks and tax documents.  (Lesien Decl., ¶ 7.)  Defendant's review of Plaintiff's personnel file reveals that Plaintiff resides in Sacramento, California.  (*Id.*)  Furthermore, in January 2023, Plaintiff provided J.Jill with her home address in connection with the settlement of a workers' compensation

DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL

matter, which shows that she continues to live and work in Sacramento, California. (Lesien Decl., ¶ 8.)

25.     Plaintiff's intent to remain domiciled in California also is evident from the fact that she brought this lawsuit against Defendant in the Superior Court of the State of California for the County of Placer.  Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

26.     Further, J.Jill's current employees live in various cities throughout California, including but not limited to, Los Angeles, Sherman Oaks, Roseville, Folsom, and Santa Rosa.  (Lesien Decl., ¶ 9.)  Thus, at least one potential class member is a citizen of the State of California.  *See, e.g.*, *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) (reversing order to remand; "Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as **one class member** has citizenship diverse from that of one defendant") (citing 28 U.S.C. § 1332(d)(2)(A)); *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *1 (S.D. Cal. July 5, 2019) (denying motion to remand; "The minimal diversity requirement is satisfied if '**any member of a class** of plaintiffs is a citizen of a State different from any defendant'") (quoting 28 U.S.C. § 1332(d)(2)(A)) (emphasis added to all).

## 2.    Defendant Is Not A Citizen Of California.

27.     Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. § 1332(c)(1).

28.     Defendant is a limited liability company ("LLC").  (Ex. A—Complaint, Caption.) Under CAFA, LLCs "are citizens of the states under whose laws they are organized and the states where they have their principal places of business."  *See Lethgo v. CP IV Waterfront, LLC*, 2022 WL 2177125, at *6 (D. Haw. June 16, 2022) (citing 28 U.S.C. § 1332(d)(10): "[A]n unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").  *Accord Flores v. Element Materials Tech. Huntington Beach LLC*, 2021 WL 663124, at *1 (C.D. Cal. Feb. 19, 2021) ("Under CAFA, a limited liability company

9

is 'deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'") (quoting 28 U.S.C § 1332(d)(10)); *Pae v. Fox Rest. Concepts, LLC*, 2017 WL 3184464, at *2 (C.D. Cal. July 25, 2017) ("[A] limited liability corporation is an unincorporated association for the purposes of CAFA."); *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) ("[F]or CAFA purposes under § 1332(d)(10)[,] . . . an LLC is properly considered an 'unincorporated association' within the meaning of § 1332(d)(10) . . . ."); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) ("[J]udges in the Ninth and Fourth Circuits have suggested that CAFA did intend to change the traditional diversity rule for LLCs.  The Court therefore finds that Defendant's citizenship is based on its principal place of business" and the state under whose laws it is organized.).

29.    Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Lesien Decl., ¶ 10.)  Defendant's principal place of business is, and has been at all times since this action commenced, located in the Commonwealth of Massachusetts.  (*Id.* at ¶¶ 11-12.) Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware and Massachusetts.

30.    The United States Supreme Court held that when determining a business entity's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010). The Ninth Circuit applies "the same tests to determine the 'principal place of business' for corporations and unincorporated associations," such as LLCs.  *Davis*, 557 F.3d at 1032 n.16 ("Generally, a company is a 'citizen' of at most two states, the state of incorporation for corporations or state of organization for unincorporated associations, and the state where it has its 'principal place of business.'"); *Pae*, 2017 WL 3184464, at *2 ("[A] limited liability corporation is an unincorporated association for the purposes of CAFA").  Under the "nerve center" test, the "principal place of business" means the headquarters where a business entity's high level officers direct, control, and coordinate its activities on a day-to-day basis.  *Id*. at 92-93 ("We conclude that 'principal place of

business' is best read as referring to the place where a [business entity's] officers direct, control, and coordinate th[at entity's] activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-1093 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

31.    Under the "nerve center" test, Massachusetts is Defendant's principal place of business.  Defendant's headquarters are located in Quincy, Massachusetts where Defendant's high level officers direct, control, and coordinate its activities.  (Lesien Decl., ¶¶ 11-12.)  Defendant's high level officers maintain offices in Quincy, and Defendant's corporate level functions are performed in the Quincy office.  (*Id.* at ¶ 11.)  Additionally, Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the Quincy headquarters.  (*Id.* at ¶ 12.)  Finally, Plaintiff's wage statements list the address of Defendant's headquarters in "4 Batterymarch Park, Quincy, MA 02169."  (*Id.*)

32.    Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the State of Delaware and the Commonwealth of Massachusetts.  28 U.S.C. § 1332(c)(1).

33.    Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Massachusetts, minimal diversity exists for purposes of CAFA.

**3.    The Citizenship Of Doe Defendants Should Be Disregarded.**

34.    The other defendants named in the Complaint are merely fictitious parties identified as "Does 1 through 50" whose citizenship is disregarded for purposes of this removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

91923496v.4

35.    Thus, the inclusion of "DOES 1 through 50" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006) (applying the rule in a CAFA removal).

**C.    The Amount In Controversy Is More Than $19.4 Million, Which Exceeds The $5 Million Statutory Threshold Under CAFA**

36.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

37.    In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

38.    The Ninth Circuit and courts in the Eastern District of California have found that any doubts over the amount in controversy in a CAFA action should be resolved in favor of federal jurisdiction. *See, e.g.*, *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015) ("'CAFA's language favors federal jurisdiction over class actions.'") (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) ("CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended . . . all doubts [be] resolved 'in favor of exercising jurisdiction over the case.'")); *Mesa v. Enloe Med. Ctr.*, 2021 WL 1187274, at *2 (E.D. Cal. Mar. 30, 2021) (noting that "CAFA . . . favor[s] federal jurisdiction"); *Clark v. WorldMark, The Club*, 2019 WL 1023887, at *6 (E.D. Cal. Mar. 4, 2019) (same).

39.    In a conclusory statement without any mathematical explanation or underlying discovery to support the assertion, Plaintiff contends that the amount in

91923496v.4

controversy is below the statutory minimum.  (Ex. A—Complaint, ¶¶ 4, 27, 37.)  Even so, J.Jill, as the removing defendant, still needs to prove only by a **preponderance of the evidence** that the amount in controversy exceeds that minimum.  *Ramos v. MOOG Inc.*, 2020 WL 969023, at *3 (C.D. Cal. Feb. 27, 2020) (applying preponderance of evidence standard to deny motion to remand where plaintiff's class action complaint made the conclusory allegation that the "aggregate claim is under five million dollars"); *see also Dart*, 135 S. Ct. at 553-554 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold.") (emphasis added, internal alterations omitted); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a **preponderance of evidence**, that the aggregate amount in controversy exceeds the jurisdictional minimum.").  *Accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a **preponderance of the evidence** that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.  In light of *Standard Fire*, this rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million.") (citations omitted); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "**preponderance of the evidence**" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same) (emphasis added to all).

40.    To satisfy this standard, "defendants' notice of removal need include **only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (emphasis added); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval

91923496v.4

presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount'") (emphasis added).

41.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-1205 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. June 22, 2017) ("[A] defendant is 'not required to comb through the records to identify and calculate the exact frequency of violations.'") (quoting *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016)); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) ("Gucci is not required to comb through its records to identify and calculate the exact frequency of violations. Rather, Gucci is only required to prove the amount in controversy by a preponderance. Where, as here, a plaintiff makes generalized allegations regarding the frequency of violations, a defendant may calculate the amount in controversy based on reasonable assumptions."); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186 (E.D. Cal. 2020) (denying motion to remand and rejecting plaintiffs argument that "a declaration alone, . . . is *per se* insufficient to establish the amount in controversy because it lacks foundation and corroborating documents such as payroll records").

42.    Indeed, "[a]t this stage of the litigation, Defendant need not produce the actual business records upon which [the declarant] bases her declaration." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *4 (C.D. Cal. Apr. 28, 2015) "Instead,

91923496v.4

'[w]here, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden.'" *Id*. (quoting *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011)).  For example, a declarant's "personal knowledge of [d]efendant's employment history, review of business records, and declaration under oath establish a proper foundation for the employment information she provides." *Id*.

43.    For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as pled in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

44.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

45.    If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%**, unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

91923496v.4

*Muniz*, 2007 WL 1302504, at \*4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at \*5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . .  Plaintiff does not allege that some putative class members were subject to distinct policies.  The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable.") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at \*3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a **100% violation rate**.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period . . . ,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a . . . 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, \*4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

46.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See, e.g.*, *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at \*2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg.,*

16

91923496v.4

*Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate—especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

47.    Plaintiff seeks to recover, on behalf of herself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to pay premium pay at the regular rate of pay for meal and rest break violations, failure to pay sick leave wages at the regular rate of pay, failure to provide accurate and complete itemized wage statements, failure to timely pay wages during and at the end of employment, unreimbursed business expenses, and unfair business practices. Plaintiff also seeks to recover attorneys' fees and costs. (Ex. A—Prayer for Relief, ¶ 3(c).)

91923496v.4

48.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds **$19.4 million** based on Plaintiff's non-specific and wide-ranging allegations of class-wide violations of wage and hour laws.  And even under very conservative assumed violation rates, the amount in controversy exceeds $7.8 million, despite Defendant excluding four of Plaintiff's claims that would increase the total amount by millions.  **All calculations supporting the amount in controversy are based directly on the Complaint's allegations**, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

    **1. The Third Cause Of Action For Unpaid Overtime Wages: The Amount In Controversy For This Claim Alone Exceeds $1.4 Million Based On Only One Hour Of Unpaid Overtime Per Employee Per Pay Period**

49.     Plaintiff's Third Cause of Action seeks to recover unpaid overtime wages. (Ex. A—Complaint, ¶¶ 8, 13, 33, 43, 75-89.)  Plaintiff alleges that, "as a matter of established **company policy and procedure**, [Defendant] administers a **uniform practice** of rounding . . . **always** to the benefit of Defendant so . . . CLASS Members are paid less than they would have been paid had they been paid for actual recorded time." (Ex. A—Complaint, ¶ 8 (emphasis added).)  Plaintiff further alleges that "DEFENDANT'S unlawful wage and hour **practices** manifested, **without limitation**, applicable to the . . . CLASS **as a whole**, as a result of implementing a **policy and practice** that failed to accurately record overtime worked . . . [and] denied accurate compensation."  (Ex. A—Complaint, ¶ 81 (emphasis added).)  As a result, Plaintiff all alleges all potential class members were underpaid wages each shift due to Defendant's "uniform practice of rounding" that "always" benefitted Defendant.  These allegations constitute a general pattern or practice of violating overtime requirements.  *See, e.g.*, *Garza Jr. v. WinCo Holding, Inc.*, 2022 WL 902782, at *5 (E.D. Cal. Mar. 28, 2022) (denying plaintiff's motion to remand; "Garza alleges WinCo **employed a policy of rounding employees' hours** that resulted in a miscalculation of total overtime hours

91923496v.4

worked.  **This constitutes a general pattern or practice of labor violations**.") (emphasis added).

50.    Indeed, Plaintiff further alleges that "DEFENDANT **regularly** failed to pay PLAINTIFF and other members of the CALIFORNIA CLASS their correct wages." (Ex. A—Complaint, ¶ 20) (emphasis added).

51.    Separate and apart from time rounding, Plaintiff also alleges that she and potential class members are owed unpaid overtime for off-the-clock work.  (Ex. A—Complaint, ¶¶ 8, 13.)  Specifically, Plaintiff alleges "DEFENDANT engage[d] in the **practice** of requiring [class members] to perform work off the clock[] that . . . required these employees to submit to **mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clock[ing] in**[] . . . for the workday." (Ex. A—Complaint, ¶ 8 (emphasis added).)  As a result, Plaintiff alleges she and potential class members were required to work off the clock before each shift, which is additional alleged unpaid overtime beyond that stemming from time rounding.

52.    As another type of unpaid overtime, Plaintiff also alleges that "DEFENDANT require[d] PLAINTIFF to work while clocked out during what [wa]s supposed to be PLAINTIFF's off-duty meal break" and that "[t]he claims of the representative PLAINTIFF are typical of the claims of each member of the CALIFORNIA CLASS." (Ex. A—Complaint, ¶¶ 8, 33(c).)  Indeed, Plaintiff alleges that "[t]his **common** business **practice** [of not paying all earned wages] is applicable to each and every CALIFORNIA CLASS Member. . . ."  (Ex. A. Complaint, ¶ 30 (emphasis added).)

53.    Plaintiff also alleges that "DEFENDANT required these employees to work off the clock without paying them for all time they were under DEFENDANT's control." (Ex. A—Complaint, ¶ 13.)  Plaintiff further alleges that Defendant had a "**policy and practice** not to pay PLAINTIFF and other CALIFORNIA CLASS Members for all time worked. . . ." (Ex. A—Complaint, ¶ 8 (emphasis added).)  As a result of the alleged unlawful "policy and practice," which "is applicable to **each and every** CALIFORNIA

CLASS Member," Plaintiff and potential class members were "required" to work off the clock before and during each shift, in several distinct ways. (Ex. A—Complaint, ¶¶ 8, 13, 33(c).)

54.    Plaintiff also alleges "DEFENDANT's unlawful wage and hour **practices** manifested, without limitation, applicable to the CALIFORNIA LABOR SUB-CLASS **as a whole**, as a result of implementing a **policy and practice** that failed to accurately record overtime worked by [potential class members] and denied accurate compensation . . . for overtime worked, including, the overtime work performed in excess of eight (8) hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek." (Ex. A—Complaint, ¶ 81 (emphasis added).)

55.    Plaintiff also alleges that when Defendant did pay overtime wages, it failed to pay overtime at the regular rate of pay. (Ex. A—Complaint, ¶¶ 9-10, 51.) Specifically, Plaintiff alleges Defendant "failed to provide Fair Labor Standards Act overtime wages due for overtime worked as a result of failing to include non-discretionary incentive compensation into their regular rates for purposes of computing the proper overtime pay due a business practice that cannot be justified. . . ." (Ex. A—Complaint, ¶ 51.) Plaintiff further alleges that she and potential class members "routinely earned non-discretionary incentive wages which increased their regular rate of pay." (Ex. A—Complaint, ¶ 19.)

56.    In the Prayer for Relief, Plaintiff seeks "an order requiring Defendant to pay all wages and all sums unlawfully withheld from compensation due to Plaintiff and the other members . . . ." (Prayer for Relief ¶ 1(C); *see also* Ex. A—Complaint, ¶ 61 (alleging that Plaintiff and class members are entitled to have "restore[d] to them the money and property which DEFENDANT has acquired, or of which [they] have been deprived, . . . including earned but unpaid wages for all time worked".) Plaintiff also seeks to recover "[a]n award of penalties, attorneys' fees and cost of suit." (Prayer for Relief ¶ 3(c).)

91923496v.4

57.     Defendant denies Plaintiff's allegations and denies that she or the putative class are entitled to any relief.  Still, Defendant conservatively reads Plaintiff's non-specific, wide-ranging, and multiple distinct theories of unpaid overtime as meaning that employees supposedly worked at least one hour of unpaid overtime per week.  Courts routinely use this and higher overtime violation rates based on allegations similar to those from Plaintiff.  *See, e.g.*, *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of **one hour of unpaid overtime per week**.  This assumption is reasonable in light of the Complaint, whose allegations lack specificity."); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of **one hour per class member per week** appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked **two hours of overtime each week** during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed **one hour of overtime compensation per week** where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of **one hour of overtime per week** where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of **one hour of unpaid overtime per week** for each class member where the complaint alleged "consistent" unpaid overtime work); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying motion to remand class action and concluding that a **"100%" violation rate** was reasonable because "plaintiff include[d] no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%" based on allegations that defendant had a "common course of conduct in violation of the law" and

21

91923496v.4

that "plaintiff and class members 'were not always paid all wages and overtime'");
*Thompson v. Fastaff, LLC*, 2022 WL 4109450, at *5 (C.D. Cal. Sept. 8, 2022) (denying
motion to remand and granting defendant's motion to dismiss in a case handled by
plaintiff's counsel, Blumenthal Nordrehaug Bhowmik & De Blouw; "**Courts have
upheld 100% violation rate** calculations even where the plaintiff explicitly pleads
otherwise.  For instance, where, as here, plaintiffs have pled violations
"**from time to time**," in *Muniz v. Pilot Travel Centers LLC*, [2007 WL 1302504 (E.D.
Cal. May 1, 2007)] the court upheld a **100% violation rate** calculation when the
plaintiffs stated in their complaint that 'were not always provided lawful meal periods.'
**More generally, courts have upheld greater labor law violation rates than are
alleged by the plaintiffs**."); *Shachno v. Marriott Int'l, Inc.*, 2023 WL 316367, at *6 (S.D.
Cal. Jan. 19, 2023) ("If a plaintiff broadly alleges wage and hour violations, it may be
reasonable for the defendant to assume a **100% violation rate**."); *Salcido v. Evolution
Fresh, Inc.*, 2016 WL 79381, at *4 (C.D. Cal. Jan. 6, 2016) ("[A] defendant may assume
a **100% violation rate** when a complaint alleges a practice that is universally
followed.  *See Ibarra,* 775 F.3d at 1199.  Thus, it is not unreasonable to assume a 100%
violation rate when the allegations support the inference that a defendant 'may potentially
violate the law in each and every situation where those policies are applied.'") (emphasis
added to all).

58.    The statute of limitations to recover unpaid wages under California Labor
Code §§ 510 and 1194 is three years.  Cal. Civ. Proc. Code § 338.  The limitations period
is extended to four years when a plaintiff also seeks restitution for the Labor Code
violations.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12
(2015) (holding that "actions for restitution and under Business and Professions Code
section 17200 are subject to a four-year statute of limitation").  Accordingly, the proposed
class period for the Third Cause of Action is from **January 6, 2019, until the present**.

59.    During the relevant time period identified in the Complaint, Defendant
employed approximately 670 non-exempt, hourly employees in California, who worked a

91923496v.4

total of approximately 41,697 weeks, based on their dates of employment.  (Lesien Decl., ¶ 14.)  Plaintiff, who contends her work experiences are "typical" of the rest of the class, had a base hourly rate of $22.39 and a base overtime rate of $33.59 ($22.39/hour * 1.5 hours), and worked on average at least five shifts per week, with many shifts lasting eight hours, and often had shifts lasting more than eight hours.  (Ex. A—Complaint ¶¶ 33(c), 43(c); Lesien Decl., ¶¶ 16-17.)

60.    Accordingly, a conservative estimate of the amount in controversy for Plaintiff's unpaid overtime claim is **$1,400,602** [$33.59/hour * 1.0 hours per week of off the clock overtime * 41,697 weeks].

61.    Defendant's calculation of the amount in controversy for Plaintiff's overtime claim is still lower than what Plaintiff actually seeks, because Plaintiff alleges she and the putative class are owed overtime wages at the higher regular rate of pay, rather than the lower base overtime rate of pay.  For ease of calculation, Defendant has calculated the amount in controversy for this claim by using the lower base overtime rate of pay.

62.    Even if Defendant used an ultra conservative violation rate of 30 minutes per week, the amount in controversy for Plaintiff's overtime claim would be $700,301 ($33.59/hour * 0.5 hours per week of off the clock overtime * 41,697 weeks).

### 2.    The Fourth Cause Of Action For Unpaid Meal Period Premiums: The Amount In Controversy For This Claim Alone Exceeds $4.6 Million

63.    For her Fourth Cause of Action, Plaintiff alleges that "DEFENDANT did not have a **policy or practice** which provided timely off-duty meal . . . breaks to PLAINTIFF and also failed to compensate PLAINTIFF for PLAINTIFF's missed meal . . . breaks."  (Ex. A—Complaint, ¶ 24.)  Plaintiff also alleges that "DEFENDANT require[d] PLAINTIFF to work while clocked out during what [wa]s supposed to be PLAINTIFF's off-duty meal break" and that "[t]he claims of the representative PLAINTIFF are typical of the claims of each member of the CALIFORNIA CLASS." (Ex. A—Complaint, ¶¶ 8, 33(c).)  She further alleges that, "PLAINTIFF, like all the other members of the CALIFORNIA CLASS, was classified as a non-exempt employee paid

on an hourly basis who was subjected to the DEFENDANT's deceptive **practice and policy** which failed to provide the legally required meal . . . periods to the CALIFORNIA CLASS. . . ."  (Ex. A—Complaint, ¶ 33(c).) As a result, Plaintiff alleges that she and the potential class members were not provided compliant meal breaks each shift they worked.

64.    As a separate and distinct type of meal violation, Plaintiff further alleges that Defendant "engaged in the **practice** of rounding the meal period times to avoid paying penalties to PLAINTIFF and other CALIFORNIA CLASS Members . . . therefore [they] forfeit[ed] meal breaks without additional compensation and in accordance with DEFENDANT'S corporate **policy and practice**."  (Ex. A—Complaint, ¶ 11; *see also* ¶ 8 ("as a matter of established company policy and procedure, [Defendant] administer[ed] a **uniform practice** of rounding the actual time worked . . . **always** to the benefit of DEFENDANT so . . . CLASS Members are paid less than they would have been paid had they been paid for actual recorded time.").)  As a result of Defendant's alleged "corporate **policy and practice**" of rounding employees' meal period time punches, Plaintiff and potential class members were not provided compliant meal breaks each shift they worked.  *See, e.g.*, *Garza*, 2022 WL 902782, at *5 (denying plaintiff's motion to remand; "Garza alleges WinCo **employed a policy of rounding employees' hours** that resulted in a miscalculation of total [] hours worked. **This constitutes a general pattern or practice of labor violations.**") (emphasis added).

65.    As another separate and distinct type of meal violation, Plaintiff further alleges that, "[a]s a result of their rigorous work schedules," Plaintiff and potential class members "were from time to time not fully relieved of duty by DEFENDANT for their meal periods," Defendant "fail[ed] to provide PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS Members with legally required meal breaks prior to their fifth (5th) hour of work," "failed to provide [potential class members] with a second off-duty meal period [o]n some workdays," and "DEFENDANT, as a matter of company **policy,**

**practice and procedure** . . . failed to record all meal . . . breaks missed by PLAINTIFF and other CALIFORNIA CLASS Members."  (Ex. A—Complaint, ¶ 8, 33(c), 91.)

66.    Plaintiff attempts to limit the frequency of some of her allegations by contending that certain violations occurred from "time to time."  But more often, and without any qualifiers, Plaintiff alleges that Defendant had unlawful meal period "policies and practices" that were "uniformly" administered.  In other cases involving the same lawyers representing Plaintiff in this case, district courts in California have rejected Plaintiff's counsel's attempts to circumvent removal under CAFA by strategically sprinkling a few "from time to time" phrases in their otherwise wide-ranging allegations. *See, e.g.*, *Thompson*, 2022 WL 4109450, at *5 (denying motion to remand and granting defendant's motion to dismiss in a case handled by Plaintiff's counsel in this case, Blumenthal Nordrehaug Bhowmik & De Blouw; "**Courts have upheld 100% violation rate** calculations even where the plaintiff explicitly pleads otherwise.  For instance, where, as here, plaintiffs have pled violations "**from time to time**," in *Muniz v. Pilot Travel Centers LLC*, [2007 WL 1302504 (E.D. Cal. May 1, 2007),] the court upheld a 100% violation rate calculation when the plaintiffs stated in their complaint that they 'were not always provided lawful meal periods.'  **More generally, courts have upheld greater labor law violation rates than are alleged by the plaintiffs**."); *Ramirez v. Cornerstone Bldg. Brands*, 2022 WL 1556664, at *1 (E.D. Cal. May 17, 2022) (denying motion to remand in a case handled by Plaintiff's counsel in this case, Blumenthal Nordrehaug Bhowmik & De Blouw; "**The fact that the Williams['] Complaint also indicates that the violations occurred 'from time to time' or 'often' does not detract from its repeated references to 'company-wide policies and procedures' that violated California labor laws**."); *Zamora v. Penske Truck Leasing Co., L.P.*, 2020 WL 4748460, at *4 (C.D. Cal. Aug. 17, 2020) (denying motion to remand in a case handled by Plaintiff's counsel in this case, Blumenthal Nordrehaug Bhowmik & De Blouw; "**Plaintiffs fail to explain why their use of 'from time to time' language should trump their use of 'policy and practice' language in the Complaint**"); *Vikram v. First Student*

25

*Mgmt., LLC*, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017) (denying motion to remand in a case handled by Plaintiff's counsel in this case, Blumenthal Nordrehaug Bhowmik & De Blouw; although "[p]laintiff's complaint allege[d] that Defendant only issued inaccurate wage statements '[f]rom time to time,'" plaintiff "alleged a practice requiring off the clock work that would occur every day a worker drove a school bus . . . based on [p]laintiff's own allegations, it is reasonable to assume **that every wage statement would be in violation**") (emphasis added to all).

67.    Plaintiff further alleges that Defendant "has the legal burden to establish that each and every CALIFORNIA CLASS Member was paid accurately [with premium pay at the regular rate of pay] for all meal . . . breaks missed[,] as required by California laws . . . . [H]owever, as a matter of policy and procedure[, Defendant] failed to have in place . . . and still fails to have in place a policy or practice to ensure that each and every [potential class member] is paid [premium pay at the regular rate of pay for meal violations,] as required by law." (Ex. A—Complaint, ¶ 30.)

68.    Plaintiff also alleges that Defendant "failed to include the incentive compensation as part of the employees' 'regular rate of pay' for purposes of calculating . . . meal . . . break premium pay." (Ex. A—Complaint, ¶ 10.) Plaintiff further alleges that she and potential class members "**routinely** earned non-discretionary incentive wages which increased their regular rate of pay." (Ex. A—Complaint, ¶ 19 (emphasis added).) Given that potential class members "routinely" earned incentive-based compensation and Defendant "still fails to have a policy or practice" accounting for such compensation, Plaintiff alleges that Defendant has underpaid all premium payments for meal period violations.

69.    California Labor Code § 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not

26

1 | less than 30 minutes . . . ."  California Labor Code § 226.7 requires employers to pay an
2 | extra hour of pay at the regular rate of pay to employees who are not provided proper
3 | meal periods.

4 | 70.    Here, Plaintiff seeks to recover two meal break premiums for each shift for
5 | each employee.  (*See* Ex. A—Complaint, ¶ 54 ("demand[ing] on behalf of herself and on
6 | behalf of each CALIFORNIA CLASS Member, one (1) hour of pay for each workday in
7 | which an off-duty meal period was not timely provided for each five (5) hours of work,
8 | and/or one (1) hour of pay for each workday in which a second off-duty meal period was
9 | not timely provided for each ten (10) hours of work.").)  Plaintiff also seeks to recover
10 | "[a]n award of penalties, attorneys' fees and cost of suit."  (Prayer for Relief ¶ 3(c).)

11 | 71.    The statute of limitations for recovery for meal period premium pay under
12 | California Labor Code § 226.7 is three years.  *Murphy v. Kenneth Cole Prods., Inc.*, 40
13 | Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7
14 | constitutes a wage or premium pay and is governed by a three-year statute of
15 | limitations.").  The statute of limitations is extended to four years when a plaintiff also
16 | pursues an action for restitution under the California Business and Professions Code
17 | § 17200, *et seq*.  *See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for
18 | restitution and under Business and Professions Code section 17200 are subject to a four-
19 | year statute of limitation").  Accordingly, the proposed class period for the fourth cause
20 | of action is from **January 6, 2019, until the present**.

21 | 72.    During the relevant time period identified in the Complaint, Defendant
22 | employed approximately 670 non-exempt, hourly employees in California, who worked a
23 | total of approximately 41,697 weeks, based on their dates of employment.  (Lesien Decl.,
24 | ¶ 14.)  Plaintiff, who contends her work experiences are "typical" of the class, had a base
25 | hourly rate of $22.39, and worked on average at least five shifts per week, with many
26 | shifts lasting eight hours, and often had shifts lasting more than eight hours.  (Ex. A—
27 | Complaint, ¶¶ 33(c), 43(c); Lesien Decl., ¶¶ 16-17.)

28 |

DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL

91923496v.4

73.     Based on the allegations of the Complaint (which, in Paragraph 54, allege up to two meal violations per day), and conservatively assuming each putative class member had five meal violations per week, each of which entitled an employee to one hour of premium at his or her regular rate of pay for each violation, the amount in controversy on this claim alone is **$4,667,979** ($22.39/hour * five meal violations per week * 41,697 weeks).

74.     Based on Plaintiff's wide-ranging and non-specific allegations, courts routinely approve the use of a 100% violation rate.  *See, e.g.*, *Muniz*, 2007 WL 1302504, at *4 (denying motion to remand and concluding that a "**100%" violation rate was reasonable**"); *Alvarez v. Off. Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (denying motion to remand; "[t]he Court . . . agrees with Defendant that it 'could utilize an alleged **100% violation rate** in calculating the amount in controversy' because Plaintiff's complaint alleges a uniform practice of meal . . . period violations"); *Salcido*, 2016 WL 79381, at *4 ("[A] defendant may assume a **100% violation rate** when a complaint alleges a practice that is universally followed.  *See Ibarra*, 775 F.3d at 1199. Thus, it is not unreasonable to assume a 100% violation rate when the allegations support the inference that a defendant 'may potentially violate the law in each and every situation where those policies are applied.'"); *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013) (denying motion to remand and approving 100% violation rate when the "meal break policy resulted in non-exempt employees not receiving meal periods").

75.     Defendant's calculation is conservative, because Plaintiff alleges that meal period premiums should be paid at the "regular rate of pay," which is greater than the base hourly rate of pay Defendant used in its calculation.

76.     Even if Defendant uses an ultra conservative violation rate of one violation per week—*i.e.*, a 20% violation rate—the amount in controversy for Plaintiff's meal period claim would be $933,596 ($22.39/hour * one meal violation per week * 41,697 weeks).

28

91923496v.4

### 3. The Fifth Cause Of Action For Unpaid Rest Period Premiums: The Amount In Controversy For This Claim Alone Exceeds $4.6 Million

77.    For her Fifth Cause of Action, Plaintiff alleges that Defendant's rest period policy is facially and automatically illegal in every instance in which it is applied, because it "restricted [potential class members] from unconstrained walks and is unlawful based on DEFENDANT's rule which states . . . [employees] cannot leave the work premises during their rest period." (Ex. A—Complaint, ¶ 12.)  Based on this allegation alone, Plaintiff contends that every rest period violated California law because potential class members could not leave the J.Jill premises.

78.    As a separate and distinct rest break violation, Plaintiff further alleges that "DEFENDANT did not have a policy or practice which provided timely off-duty . . . rest breaks to PLAINTIFF and also failed to compensate PLAINTIFF for PLAINTIFF's . . . rest breaks." (Ex. A—Complaint ¶ 24.)  Plaintiff also alleges her claims "are typical of the claims of each member of the CALIFORNIA CLASS." (Ex. A—Complaint, ¶¶ 8, 33(c).)  She further alleges that, "PLAINTIFF, like all the other members of the CALIFORNIA CLASS, was classified as a non-exempt employee paid on an hourly basis who was subjected to the DEFENDANT's deceptive **practice and policy** which failed to provide the legally required . . . rest periods to the CALIFORNIA CLASS. . . ." (Ex. A—Complaint, ¶ 33(c).)  As a result, according to Plaintiff, she and potential class members were not provided compliant rest breaks each shift they worked.

79.    As a separate and distinct rest break violation, Plaintiff further alleges that Defendant "failed to record all . . . rest breaks missed by PLAINTIFF and other CALIFORNIA CLASS Members" and "employees from time to time were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10 minutes) for some shifts worked of ten (10) hours or more from time to time." (Ex. A—Complaint, ¶¶ 29, 95.)

80.    Plaintiff also alleges that Defendant "failed to include the incentive compensation as part of the employees' 'regular rate of pay' for purposes of calculating . . . rest break premium pay." (Ex. A—Complaint, ¶ 10.)  Plaintiff further alleges that she and potential class members "**routinely** earned non-discretionary incentive wages which increased their regular rate of pay." (Ex. A—Complaint, ¶ 19 (emphasis added).)  Plaintiff further alleges that Defendant "has the legal burden to establish that each and every CALIFORNIA CLASS Member was paid accurately [with premium pay at the regular rate of pay] for all . . . rest breaks missed as required by California laws . . . .  [H]owever, as a matter of policy and procedure[, Defendant] failed to have in place . . . and still fails to have in place a policy or practice to ensure that each and every [potential class member] is paid [premium pay at the regular rate of pay for each rest period violation,] as required by law." (Ex. A—Complaint ¶ 30.)  As a result, Plaintiff contends that Defendant has underpaid all rest period premiums.

81.    Based on these allegations, Plaintiff "demands on behalf of herself and each member of the CALIFORNIA LABOR SUB-CLASS, one (1) hour of pay for each workday in which an off duty paid rest period was not timely provided as required by law." (Ex. A—Complaint, ¶ 55.)  Plaintiff also seeks to recover "[a]n award of penalties, attorneys' fees and cost of suit." (Prayer for Relief ¶ 3(c).)

82.    Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1028 (2012).  California Labor Code § 226.7 requires employers to pay an extra hour of pay at the regular rate of pay to employees who are not provided proper rest periods.  An employee is entitled to an additional hour of pay at the regular rate of pay for each day there is a rest period violation (this is on top of any premium pay owed for a meal violation each day).  *See United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 70 (2011) (interpreting Labor Code § 226.7(c) to specify that "employees . . . may recover up to two additional

30

hours of pay on a single work day for meal period and rest period violations—one for failure to provide a meal period and another for failure to provide a rest period").

83.    The statute of limitations for recovery of rest period premium pay under California Labor Code § 226.7 is three years. *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq. See Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the Fifth Cause of Action is from **January 6, 2019, until the present**.

84.    During the relevant time period identified in the Complaint, Defendant employed approximately 670 non-exempt, hourly employees in California, who worked a total of approximately 41,697 weeks, based on their dates of employment. (Lesien Decl., ¶ 14.) Plaintiff, who contends her work experiences are "typical" of the class, had a base hourly rate of $22.39, and worked on average at least five shifts per week, with many shifts lasting eight hours, and often had shifts lasting more than eight hours. (Ex. A—Complaint, ¶¶ 33(c), 43(c); Lesien Decl., ¶¶ 16-17.)

85.    Based on the allegations of the Complaint, and assuming each putative class member had five rest violations per week and are entitled to one hour of premium pay at the regular rate of pay for each violation, the amount in controversy on this claim is **$4,667,979** ($22.39/hour * five rest violations per week * 41,697 weeks).

86.    Based on the types of unqualified and non-specific allegations Plaintiff makes, district courts in California routinely use the same or higher violation rates than those used by Defendant here. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *4 (denying motion to remand and concluding that a "**100%" violation rate was reasonable**"); *Alvarez v. Off. Depot, Inc.*, 2017 WL 5952181, at *3 (denying motion to remand; "[t]he Court . . . agrees with Defendant that it 'could utilize an alleged **100% violation rate** in calculating the amount in controversy' because Plaintiff's complaint alleges a uniform

91923496v.4

practice of . . . rest period violations"); *Salcido*, 2016 WL 79381, at *4 ("[A] defendant may assume a **100% violation rate** when a complaint alleges a practice that is universally followed. *See Ibarra*, 775 F.3d at 1199. Thus, it is not unreasonable to assume a 100% violation rate when the allegations support the inference that a defendant 'may potentially violate the law in each and every situation where those policies are applied.'").

87.    Defendant's calculation is conservative, because Plaintiff alleges that rest period premiums should be paid at the "regular rate of pay," which is greater than the base hourly rate of pay that Defendant used in its calculation. (Ex. A—Complaint, at ¶¶ 9-10.)

88.    Even if Defendant uses an ultra conservative violation rate of one violation per week—*i.e.*, a 20% violation rate—the amount in controversy for Plaintiff's rest period claim would be $933,596 ($22.39/hour * 1.0 rest violation per week * 41,697 weeks).

### 4.    The Sixth Cause of Action For Failure To Provide Accurate And Itemized Wage Statements: The Amount In Controversy For This Claim Alone Exceeds $785,000

89.    For her Sixth Cause of Action, Plaintiff alleges that Defendant's "wage statements" failed to include "all applicable hourly rates during the pay periods, the total hours worked, and the applicable pay period in which the wages were earned." (Ex. A—Complaint, ¶¶ 14, 100.) Each of these allegations, if true, would automatically make every wage statement inaccurate. Plaintiff further alleges that, "[w]hen the hours shown on the wage statements were added up, they did not equal the actual total hours worked during the pay period in violation of Cal. Lab. Code [§] 226(a)(2)." (*Id*.)

90.    Plaintiff further alleges that, "as a matter of established company policy and procedure, [Defendant] administer[ed] a uniform practice of rounding the actual time worked . . . **always** to the benefit of DEFENDANT so . . . CLASS Members are paid less than they would have been paid had they been paid for actual recorded time." (Ex. A—Complaint, ¶ 8 (emphasis added).) This allegation alone means that Plaintiff contends—

91923496v.4

for a separately sufficient reason—that every wage statement issued by Defendant is inaccurate.

91.     As separate and independently actionable theories of liability, Plaintiff also alleges that Defendant had a "**policy and practice** not to pay PLAINTIFF and other CALIFORNIA CLASS Members for all time worked," and that "DEFENDANT, as a matter of company **policy, practice and procedure** . . . failed to record all meal and rest breaks missed by PLAINTIFF and other CALIFORNIA CLASS Members . . . ." (Ex. A—Complaint, ¶¶ 8, 29.)

92.     Plaintiff further alleges that Defendant "failed to issue to PLAINTIFF an itemized wage statement that lists all the requirements under California Labor Code [§] 226 *et seq*." (Ex. A—Complaint, ¶ 14.)  Plaintiff also alleges her claims "are typical of the claims of each member of the CALIFORNIA CLASS." (Ex. A—Complaint, ¶¶ 8, 33(c).)

93.     Based on these allegations, Plaintiff seeks to recover "[t]he greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per each member of the CALIFORNIA LABOR SUB-CLASS for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and an award of costs for violation of Cal. Lab. Code § 226." (Ex. A—Prayer for Relief, ¶ 2(c).)  Plaintiff also seeks "[a]n award of [] attorneys' fees and cost of suit." (Ex. A—Prayer for Relief, ¶ 3(c).)

94.     California Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiffs filed their Complaint on January 6, 2023, the statutory period for the claim under California Labor Code § 226 runs from **January 6, 2022, until the present**.

91923496v.4

95.    During the limitations period of January 6, 2022, until the present, there are approximately 298 potential class members who were collectively issued approximately 9,838 wage statements, based on their dates of employment as of January 26, 2023. (Lesien Decl., ¶ 19.)

96.    When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement, with a maximum of $4,000 per employee, the amount in controversy on this claim would equal no less than **$785,250**, based on each employees' dates of employment.

97.    Defendant's calculation is reasonable, because each and every wage statement would be inaccurate based on Plaintiff's allegations that every employee underwent unlawful time "rounding" that "always" favored J.Jill in every shift; Defendant failed to capture "all time work"; Defendant failed to capture missed meal and rest breaks on wage statements; Defendant failed to pay overtime, meal period premiums, rest period premiums, and paid sick leave at the regular rate of pay; and every single wage statement issued by Defendant is unlawful because they did not list the applicable pay periods.  Any one of these alleged violations alone would create an inaccurate wage statement.  Courts have repeatedly held that a 100% violation rate is proper based on similar allegations as Plaintiff puts forth here.  *See, e.g.*, *Rivera v. Jeld-Wen, Inc.*, 2022 WL 3702934, at *6 (S.D. Cal. Feb. 4, 2022) (denying motion to remand and applying a 100% violation rate; "**courts have instructed that wage statement claims must be assessed in the context of the other wage-and-hour violations alleged in a complaint**"; "Plaintiffs allege Defendant had a 'policy and practice' of failing to pay Plaintiffs and purported class members with meal-and-rest-period premiums and to compensate them with all regular and overtime wages.  Because of the pervasiveness of these allegations, '**it is reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement**'"); *Johnson v. Parsec, Inc.*, 2022 WL 17407960, at *1 (C.D. Cal. Dec. 2, 2022) (denying motion to remand; "a **100% violation rate** for the[] [wage

34

statement claim] follows logically from Plaintiffs' allegations. **If the meal and rest break violations regularly occurred and were typical across the class as Plaintiffs have alleged, then necessarily the vast majority, if not all, wage statements would be incorrect . . . because those employees would not have received pay for missed breaks . . . .**"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019) (denying motion to remand and applying a 100% violation rate for wage statement penalties; "**since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties**. Accordingly, the Court concludes that a **100% violation rate is a reasonable assumption** based on these claims"); *Diaz v. Ardagh Metal Beverage USA, Inc.*, 2022 WL 3368537, at *6 (E.D. Cal. Aug. 15, 2022) (denying motion to remand; "the Court finds the **100% wage statement violation rate to be reasonable**"); *Sanchez v. Abbott Lab'ys*, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (denying motion to remand and "find[ing] a **100% violation rate for inaccurate wage statement penalties wa[s] reasonable**" based on "[p]laintiff's meal period, rest period, and overtime claims"); *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at *6 (C.D. Cal. July 28, 2015) (denying motion to remand and accepting a **100% violation rate for wage statement claims** where plaintiff alleged that defendant "engaged in a uniform policy and systematic scheme of wage abuse") (internal quotation marks omitted) (emphasis added to all). Accordingly, based on Plaintiff's wide-ranging and unqualified allegations, every wage statement issued by Defendant violates California Labor Code § 226(a).

### 5. The Seventh Cause Of Action For Unreimbursed Business Expenses: The Amount In Controversy For This Claim Alone Exceeds $1.5 Million

98. For her Seventh Cause of Action, Plaintiff alleges that Defendant "intentionally and knowingly failed to reimburse and indemnify [potential class members] for required business expenses." (Ex. A—Complaint, ¶ 22.) Specifically, Plaintiff alleges that potential class members "were required by DEFENDANT to use

35

their own personal cellular phones as a result of and in furtherance of their job duties as employees . . . but [we]re not reimbursed or indemnified." (Ex. A—Complaint, ¶ 23.)

99.    As a separate and distinct expense reimbursement violation, Plaintiff also alleges that potential class members "were required by DEFENDANT to use their personal . . . home offices in order to perform work related job tasks." (Ex. A—Complaint, ¶ 104.) Because cell phone and home office expenses arise every month, Plaintiff is alleging at least two separate monthly bills that were not reimbursed for each employee each month.

100.    Plaintiff further alleges that "Defendant's **policy and practice** was to not reimburse PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS Members for expenses resulting from using their personal cellular phones and home offices . . . [which] were necessary to complete their principal job duties." (Ex. A—Complaint, ¶ 104.)

101.    Plaintiff seeks to recover from Defendant "reimbursement for expenditures or losses incurred by [Plaintiff] and the CALIFORNIA LABOR SUB-CLASS Members in the discharge of their job duties for Defendant . . . ." (Ex. A—Complaint, ¶ 105.) Plaintiff also seeks "[a]n award of penalties, attorneys' fees and cost of suit." (Ex. A—Prayer for Relief, ¶ 3(c).)

102.    Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a).

103.    The statute of limitations to recover unpaid business expenses under California Labor Code § 2802 is three years. Cal. Civ. Proc. Code § 338. The statute of limitations is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the fifth cause of action is from **January 6, 2019, until the present**.

91923496v.4

104.   During the limitations period of January 6, 2019 to present, there are approximately 670 putative class members, who worked a total of approximately 41,697 weeks, based on their dates of employment. (Lesien Decl., ¶ 14.) The 41,697 weeks equates to approximately 9,622 total months worked (41,697 weeks worked * (12 months per year ÷ 52 weeks per year)).

a.    **The Seventh Cause of Action For Unreimbursed Cell Phone Expenses: The Amount In Controversy Exceeds $960,000**

105.   To show the amount in controversy for the alleged failure to reimburse cell phone expenses, there are a wide variety of cell phone plans available from different providers. Individualized issues are required to determine what type of cell plan each potential class member used. But according to the U.S. Bureau of Labor Statistics, the average annual cell phone plan cost $1,218 to $1,253 ($101.50 to $104.41 per month) between 2019 and 2020. (U.S. Bureau of Labor Statistics, Consumer Expenditure Surveys, p. 2, *available at* https://www.bls.gov/cex/tables/calendar-year/mean/cu-all-multi-year-2013-2020.pdf.)

106.   Assuming that each putative class member during the limitations period may recover cell phone expenses in the amount of $100 per month, the amount in controversy for unpaid cell phone expenses would be at least **$962,200** ($100 per month * 9,622 months).

107.   Even if Defendant conservatively assumes that potential class members could recover only $25 per month—*i.e.*, less than 25% of the U.S. Bureau of Labor's average—the amount in controversy for Plaintiff's cell phone expense claim would be at least $240,500 ($25 per month * 9,622 months).

b.    **The Seventh Cause Of Action For Unreimbursed Home Office Expenses: The Amount In Controversy Exceeds $615,000**

108.   As a separate and distinct type of reimbursement, Plaintiff seeks to recover unreimbursed "home office" expenses, but she does not specify which "home office" expenses are at issue in her Complaint. (Ex. A—Complaint, ¶¶ 104-105.) Based on

37

91923496v.4

Plaintiff's indeterminate claim, numerous "home office" expenses could be at issue, including mortgage or rent costs, property taxes, home maintenance, home repairs, gas, electric, water, heating oil, garbage collection, residential telephone service, and home internet.

109.   Social Finance, Inc., better known as "SoFi," found that the average utility bill in California is $375 per month: electricity ($117), gas ($63), cable and internet ($118), and water ($77).  (SoFi, *Cost of Living in California*, https://www.sofi.com/cost-of-living-in-california/ (last visited Feb. 6, 2023).)  The average bill would be much larger if mortgages or rent, property taxes, and insurance were included.

110.   Here, Defendant conservatively limits its amount in controversy calculation to home internet expenses, though Plaintiff may be claiming many other types of "home office" expenses.

111.   There are a wide variety of home internet plans and providers. Individualized issues are required to determine each potential class members' home internet costs.  But according to Spectrum, the average home internet bill is $64 per month.  (Spectrum, *How Much Is Spectrum Internet Only?*, https://www.spectrum.com/resources/internet-wifi/how-much-is-internet-only (last visited Feb. 6, 2023).)  Further, according to a survey of 10,000 broadband households, the average home internet bill was $64 in 2021.  (Cision PR Newswire, *Parks Associates: As of Q1 2021, 41% of US Broadband Households Have Standalone Broadband Service, Paying an Average of $64 Per Month*, https://www.prnewswire.com/news-releases/parks-associates-as-of-q1-2021-41-of-us-broadband-households-have-standalone-broadband-service-paying-an-average-of-64-per-month-301313691.html (last visited Feb. 6, 2023).) And according to a report of 290 plans, the average monthly cost across all plans is $68.38.  (New America, *The Cost of Connectivity 2020*, https://www.newamerica.org/oti/reports/cost-connectivity-2020/focus-on-the-united-states/ (last visited Feb. 6, 2023).)

DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL

91923496v.4

112.   Assuming that each putative class member during the limitations period may recover home internet expenses in the amount of $64 per month (the lowest of the averages set forth above), the amount in controversy is at least **$615,808** ($64 per month * 9,622 months).

113.   Even if Defendant conservatively assumes that potential class members could recover only $25 per month, the amount in controversy for home internet is at least $240,500  ($25 per month * 9,622 months).

**6.     The Eighth Cause Of Action For Failure To Provide Wages When Due Upon Termination: The Amount In Controversy For This Claim Alone Exceeds $2.4 Million**

114.   For Plaintiff's Eighth Cause of Action, Plaintiff alleges "[t]he employment of PLAINTIFF and many CALIFORNIA LABOR SUB-CLASS Members has terminated and DEFENDANT has not tendered payment of all wages as required by law."  (Ex. A—Complaint, ¶ 112.)

115.   Plaintiff further alleges that, "[a]s a **pattern and practice**, DEFENDANT **regularly** failed to pay PLAINTIFF and other members of the CALIFORNIA CLASS their correct wages and accordingly owe waiting time penalties pursuant to Cal. Lab. Code Section 203."  (Ex. A—Complaint, ¶ 20) (emphasis added).  Specifically, Plaintiff seeks an award of waiting time penalties for failing to pay all minimum wages, overtime wages, paid sick leave wages, meal period premiums, and rest period premiums arising from daily unlawful rounding policies and practices, off-the-clock work, regular rate theories of liability, and for noncompliant meal and rest periods.  (Ex. A—Complaint, ¶¶ 8, 10-13, 20, 74, 89.)

116.   Plaintiff further alleges "DEFENDANT's **policy and practice** was to unlawfully and intentionally deny timely payment of wages due to PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS."  (Ex. A—Complaint, ¶ 66.)

117.   Plaintiff "demands thirty days of pay as penalt[ies] for not paying all wages due at [the] time of termination for all employees who terminated employment . . . plus

91923496v.4

interest and statutory costs as allowed by law." (Ex. A—Complaint, ¶ 113.) Plaintiff also seeks "[a]n award of [] attorneys' fees." (Ex. A—Prayer for Relief, ¶ 3(c).)

118.   Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay, if the employee is owed but not timely paid even a single penny following the end of the employment relationship. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.").

119.   The statute of limitations for waiting time penalties under California Labor Code § 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010) ("[W]e conclude there is but one reasonable construction: section 203(b) contains a single, three-year limitations period governing all actions for section 203 penalties irrespective of whether an employee's claim for penalties is accompanied by a claim for unpaid final wages."). Accordingly, the proposed class period for the Eighth Cause of Action is from **January 6, 2020, until the present**.

120.   Here, approximately 451 potential class members' employment with Defendant ended between January 6, 2020 and the present. (Lesien Decl., ¶ 18.) On average, Plaintiff typically worked eight hours per shift, and her hourly rate of pay was $22.39 per hour. (Lesien Decl., ¶¶ 16-17.) Given that Plaintiff seeks the maximum award of waiting time penalties for all employees who were terminated during the three-year statute of limitations, and she contends that her work experiences are "typical" of all other potential class members (Ex. A—Complaint ¶¶ 33(c), 43(c), the amount in controversy is at least **$2,423,494** (451 former employees * eight hours worked per day on average * 30 days * $22.39 per hour).

121.   Courts have repeatedly held that a 100% violation rate is reasonable based on any amount—no matter how miniscule—of unpaid minimum wage, overtime, meal period premium pay, or rest period premium pay, because employees were not paid all

91923496v.4

owed wages upon termination. *See, e.g.*, *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (denying motion to remand; "Defendant was reasonable in estimating, based on plaintiff's allegations, that **all members** of the proposed class—all assistant managers—would have missed a meal period as described in the complaint at least once and **were thus entitled to the waiting time penalty**"); *Johnson*, 2022 WL 17407960, at *1 (denying motion to remand; "a **100% violation rate** for the[] [waiting time penalty claim] follows logically from Plaintiffs' allegations. **If the meal and rest break violations regularly occurred and were typical across the class as Plaintiffs have alleged, then necessarily the . . . waiting time penalties would apply for any employees who separated from employment because those employees would not have received pay for missed breaks prior to separation**"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019) (denying motion to remand and applying a 100% violation rate for waiting time penalties; "**Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption** . . . ."); *Mejia*, 2015 WL 2452755, at *6 (denying motion to remand and applying a 100% violation rate for waiting time penalty claims; "[s]ince it is reasonable to assume a **100% violation rate for the rest break claim**, **then it is reasonable to further assume that 100% of the former employees** would have had those unpaid rest break wages unlawfully withheld after their employment ended") (emphasis added to all).

122.    An assumed 100% violation rate is undoubtedly warranted here, given that Plaintiff "demands thirty days of pay as penalt[ies] for not paying all wages due at [the] time of termination **for all employees who terminated employment** . . . plus interest and statutory costs as allowed by law." (Ex. A—Complaint, ¶ 113.) Defendant's calculation is also conservative because it does not include "interest and statutory costs." (*Id*.)

41

### 7.    Attorneys' Fees

123.    Plaintiff also seeks an award of attorneys' fees "on all claims."  (Ex. A—Prayer for Relief ¶ 3(c); *see also* Ex. A—Complaint, ¶¶ 21, 119.)  In *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit concluded that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Id*. at 794.  *Accord Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in the amount in controversy, regardless of whether the award is discretionary or mandatory).

124.    Plaintiff may recover attorneys' fees for the nonpayment of any wages.  Cal. Lab. Code § 218.5(a) ("In any action brought for the nonpayment of wages . . . , the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.").

125.    Plaintiff may recover attorneys' fees if she prevails on her claims for unpaid minimum and overtime wages.  Cal. Lab. Code § 1194(a) ("Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.").

126.    Plaintiff may recover attorneys' fees if she prevails on her meal and rest period claims, because premium payments for missed breaks constitute wages.  *See Betancourt v. OS Rest. Servs., LLC*, 83 Cal. App. 5th 132, 140 (2022) ("Extra pay for missed breaks 'constitutes wages subject to the same timing and reporting rules as other

42

forms of compensation for work.'") (quoting *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93, 102 (2022)).

127.    Plaintiff may recover attorneys' fees if she prevails on her claims for unreimbursed business expenses.  Cal. Lab. Code § 2802(c) ("For purposes of this section, the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.").

128.    Plaintiff may recover attorneys' fees if she prevails on her claims for inaccurate wage statements and waiting time penalty claims.  Cal. Lab. Code § 226(e) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover . . . an award of costs and reasonable attorney's fees."); *Betancourt*, 83 Cal. App. 5th at 140 ("[P]laintiff's complaint sought penalties, costs and attorney fees under section 226 for failing to include rest break premiums on her itemized wage statements; and waiting time penalties under sections 201 through 203 for failure to pay all wages on termination. These were claims for nonpayment of wages.  Under section 218.5, the court must award the prevailing party reasonable attorney fees and costs '[i]n any action brought for the nonpayment of wages,' if any party requested fees and costs at the beginning of the action.").

129.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-1011 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy."); *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010-1011).

43

1

2

3

4

5

6

130.    "The amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-415 (9th Cir. 2018); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

131.    In the class action context, courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fees under the "percentage of fund" calculation and courts may depart from this benchmark when there are "special circumstances." *See, e.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Rhinehart v. Genworth Life & Annuity Ins. Co.*, 2019 WL 295770, at *7 (E.D. Cal. Jan. 23, 2019) (denying motion to remand; "a 25-percent award of attorney's fees is a reasonable estimate of the amount placed into controversy"); *Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 1330675, at *9 (E.D. Cal. Mar. 28, 2014) (denying motion to remand; "the amount in controversy includes attorneys' fees, and a common estimate for the attorneys' fees award is 25 percent of the recoverable damages"); *Tompkins v. Basic Rsch. LL*, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (denying motion to remand; "25% of the common fund is a fair estimate of attorneys' fees"); *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78–84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting

44

the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16–18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

132.   Even under the benchmark of 25% of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be at least **$3,880,828** in this case, or at least **$1,564,309** based on the ultra conservative alternative violation rates discussed by Defendant:

| Claim | Amount in Controversy Based on the Allegations in the Complaint | Amount in Controversy Based on Conservative Violation Rates Lower Than What Plaintiff Alleges in the Complaint |
|---|---|---|
| Unpaid Overtime Wages | $1,400,602 | $700,301 |
| Unpaid Meal Period Premiums | $4,667,979 | $933,596 |
| Unpaid Rest Period Premiums | $4,667,979 | $933,596 |
| Non-Compliant Wage Statements | $785,250 | $785,250 |
| Unreimbursed Cell Phone Expenses | $962,200 | $240,500 |
| Unreimbursed Home Office Expenses | $615,808 | $240,500 |
| Waiting Time Penalties | $2,423,494 | $2,423,494 |
| **Attorneys' Fees (25% of Above Figures)** | **$3,880,828.00** | **$1,564,309.25** |

### 8.    The Total Aggregate Amount In Controversy Exceeds $19 Million

133.   Although Defendant denies Plaintiff's allegations that she or the putative class are entitled to any relief for the above-mentioned claims, based on the foregoing

45

calculations that are based on Plaintiff's wide-ranging and unqualified allegations, the aggregate amount in controversy strictly for the subset of Plaintiff's claims that are addressed above is approximately **$19,404,140**.  Even when Defendant uses ultra conservative assumed violation rates for these claims, the amount in controversy is approximately **$7,821,456**:

| Claim | Amount in Controversy Based on the Allegations in the Complaint | Amount in Controversy Based on Conservative Violation Rates Lower Than What Plaintiff Alleges in the Complaint |
|---|---|---|
| Unpaid Overtime Wages | $1,400,602 (one hour of unpaid overtime per employee per week) | $700,301 (30 minutes of unpaid overtime per employee per week) |
| Unpaid Meal Period Premiums | $4,667,979 (five meal violations / five hours of premium pay per employee per week) | $933,596 (one meal violation / one hour of premium pay per employee per week) |
| Unpaid Rest Period Premiums | $4,667,979 (five rest violations / five hours of premium pay per employee per week) | $933,596 (one rest violation / one hour of premium pay per employee per week) |
| Non-Compliant Wage Statements | $785,250 (based on 9,838 wage statements issued) | $785,250 (based on 9,838 wage statements issued) |
| Unreimbursed Cell Phone Expenses | $962,200 (based on $100 per month over 9,622 months) | $240,500 (based on $25 per month over 9,622 months) |
| Unreimbursed Home Office Expenses | $615,808 (based on home internet only at $64 per month over 9,622 months) | $240,500 (based on home internet only at $25 per month over 9,622 months) |

46

91923496v.4

| Claim | Amount in Controversy Based on the Allegations in the Complaint | Amount in Controversy Based on Conservative Violation Rates Lower Than What Plaintiff Alleges in the Complaint |
|---|---|---|
| Waiting Time Penalties | $2,423,494 (based on 451 former employees) | $2,423,494 (based on 451 former employees) |
| Attorneys' Fees | $3,880,828 (based on 25% of the potential recovery) | $1,564,309 (based on 25% of the potential recovery) |
| Minimum Wages | Omitted from the calculations, but it can be included, if needed to meet the amount in controversy requirement | |
| Reporting Time Pay | Omitted from the calculations, but it can be included, if needed to meet the amount in controversy requirement | |
| Paid Sick Leave | Omitted from the calculations, but it can be included, if needed to meet the amount in controversy requirement | |
| Untimely Wages Paid During Employment | Omitted from the calculations, but it can be included, if needed to meet the amount in controversy requirement | |
| **Total** | **$19,404,140** | **$7,821,546** |

134.   Defendant did **not** include four of Plaintiff's claims—unpaid minimum wage, unpaid sick leave wages, unpaid reporting time, and failure to timely pay wages during employment—in the above amount in controversy calculations.  (Ex. A—Complaint ¶¶ 8, 13, 16-17, 38, 49, 114-119.)

135.   If Plaintiff challenges the amount in controversy in a motion to remand, Defendant will include the four claims above in its remand opposition, which will further drive the amount in controversy well above $5 million.  For example, if Defendant conservatively estimates that potential class members had two hours of unpaid reporting time each month, the amounts listed above will **increase** by approximately **$538,591**

DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL

91923496v.4

([$22.39 per hour * 9,622 months * two violations per month] plus [approximately $107,718 in attorneys' fees: $430,783 * 25%]).

136.    As another example, Plaintiff contends that Defendant failed to timely pay wages during employment in violation of California Labor Code § 204.  (Ex. A—Complaint ¶ 16, 49, 51, 117.)  Plaintiff seeks to recover $100 for each initial violation, $200 for each subsequent violation, and 25% of the total amount unlawfully withheld. (Ex. A—Complaint ¶ 15; citing Cal. Lab. Code § 210 ("[E]very person who fails to pay the wages of each employee as provided in Sections . . . 204 [and] 204(b) . . . shall be subject to a civil penalty" based on $100 for each initial violation, $200 for each subsequent violation, plus 25% of the amount unlawfully withheld).)

137.    Plaintiff's claim for failure to timely pay wages during employment in violation of California Labor Code § 204 has a three-year limitations period.  *Rivera v. Jeld-Wen, Inc.*, 2022 WL 3219411, at *4 (S.D. Cal. Aug. 9, 2022) ("Plaintiffs' claims for . . . failure to timely pay wages under §§ 201, 202, and 204 are all governed by the three-year statute of limitations in California Code of Civil Procedure § 338(a).").  Based on the filing date of the Complaint on January 6, 2023, the proposed class period for this claim covers the time period of **January 6, 2020, to the present**.

138.    If Defendant conservatively limits Plaintiff's claim for the untimely payment of wages during employment to a one-year period—*i.e.*, January 6, 2022 to the present—Defendant would have issued 9,838 untimely wage statements during that period. (Lesien Decl., ¶ 19.)  If Plaintiff is awarded $100 for each initial violation and $200 for each subsequent violation, the total amount in controversy will **increase** by approximately **$2,422,250** ((9,838 wage statements * $200 per wage statement) - (298 initial violations * $100 per initial violation)] plus [approximately $484,450 in attorneys' fees: $1,937,800 * 25%]).  Defendant's calculation is conservative, because it encompasses only a one-year, rather than a three-year, limitations period.

139.    Although Defendant denies Plaintiff's allegations that she or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a

91923496v.4

conservative estimate based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

140.   Because minimal diversity of citizenship exists, the potential class size exceeds 100, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

141.   To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

## V.    VENUE

142.   Venue lies in the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in the Superior Court of the State of California for the County of Placer, which is located within the Eastern District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## VI.    NOTICE TO STATE COURT AND TO PLAINTIFF

143.   Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of Placer.  A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Placer as required under 28 U.S.C. § 1446(d).

[Remainder of page left blank intentionally]

DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL

91923496v.4

1

## VII.  PRAYER FOR REMOVAL

144.   WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of Placer to the United States District Court for the Eastern District of California.

DATED: February 16, 2023                    SEYFARTH SHAW LLP

By: _____
      Jon D. Meer
      Paul J. Leaf
      Justin J. Jackson
      Attorneys for Defendant
      JILL ACQUISITION LLC

DEFENDANT JILL ACQUISITION LLC'S NOTICE OF REMOVAL
91923496v.4