UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA SERRIEH,<br><br>  Plaintiff,<br><br>  v.<br><br>JILL ACQUISITION LLC,<br><br>  Defendant. | No.  2:23-cv-00292-DAD-AC<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. No. 10) |

This matter is before the court on plaintiff's motion to remand this action to the Placer County Superior Court. (Doc. No. 10-1.) On April 12, 2023, the motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 13.) For the reasons explained below, the court will deny plaintiff's motion to remand.

**BACKGROUND**

On January 6, 2023, plaintiff filed this class action lawsuit against defendant Jill Acquisition LLC ("defendant") and unnamed Doe defendants 1–50 in the Placer County Superior Court. (Doc. No. 1-1 at 2.) In her complaint, plaintiff asserts the following nine causes of action: (1) unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*; (2) failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (3) failure to pay overtime wages in violation of California Labor Code § 510; (4) failure to provide required meal periods in violation of California Labor Code §§ 226.7 and 512 and the

1

1  applicable Industrial Welfare Commission ("IWC") wage order; (5) failure to provide required

2  rest periods in violation of California Labor Code §§ 226.7 and 512 and the applicable IWC wage

3  order; (6) failure to provide accurate itemized statements in violation of California Labor Code

4  § 226; (7) failure to reimburse employees for required expenses in violation of California Labor

5  Code § 2802; (8) failure to provide wages when due in violation of California Labor Code

6  §§ 201–03; and (9) failure to pay sick pay wages in violation of California Labor Code §§ 201–

7  04, 233, and 246. (*Id*.)

8        On February 16, 2023, defendant removed this action to this federal court pursuant to 28

9  U.S.C. §§ 1331, 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, on the grounds that federal

10  question jurisdiction exists and that the requirements for jurisdiction under the Class Action

11  Fairness Act of 2002 ("CAFA") are met. (Doc. No. 1 at 2.) On March 17, 2023, plaintiff filed

12  the pending motion to remand, arguing that federal question jurisdiction does not exist and that

13  the amount in controversy requirement for jurisdiction under CAFA is not met in this case. (Doc.

14  No. 10-1 at 6.) On March 30, 2023, defendant filed an opposition to plaintiff's motion to remand.

15  (Doc. No. 11.) On April 10, 2023, plaintiff filed her reply thereto. (Doc. No. 12.)

16        **LEGAL STANDARD**

17        A suit filed in state court may be removed to federal court if the federal court would have

18  had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1331, the court

19  has original jurisdiction over civil actions "arising under" federal law. Removal based on § 1331

20  is governed by the "well-pleaded complaint rule." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392

21  (1987). Under this rule, "federal jurisdiction exists only when a federal question is presented on

22  the face of the plaintiff's properly pleaded complaint." *Id.* If the complaint does not specify

23  whether a claim is based on federal or state law, it is a claim "arising under" federal law only if it

24  is "clear" that it raises a federal question. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir. 1996).

25  Thus, the plaintiff is generally the "master of the claim." *Caterpillar,* 482 U.S. at 392.

26        "If at any time before final judgment it appears that the district court lacks subject matter

27  jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[T]he burden of establishing

28  federal jurisdiction falls to the party invoking the statute." *Cal. ex rel. Lockyer v. Dynegy, Inc*.,

375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). If there is any doubt as to the right of removal under federal question or diversity jurisdiction, a federal court must reject jurisdiction and remand the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004).

  Under CAFA, federal courts also have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 592 (2013)). While there is no presumption against removal pursuant to the CAFA, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006). The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. "[A] removing defendant's notice of removal 'need not contain evidentiary submissions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015)). The amount in controversy alleged in the defendant's notice of removal "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. at 89. When the defendant's assertion of the amount in controversy is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. A preponderance of the evidence standard requires that the defendant "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Removal is proper "'if the district court finds, by a preponderance of the

/////

3

evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 88 (quoting § 1446(c)(2)(B)).

## ANALYSIS

In the pending motion to remand, plaintiff contends that defendant improperly removed this action because federal question jurisdiction does not exist and because defendant's amount in controversy calculation for jurisdiction under CAFA is unreasonable. (Doc. No. 10-1 at 15–26.)

**A.     Jurisdiction under CAFA**

Defendant claims that the court has CAFA jurisdiction over this action because there is minimal diversity between the parties, there are at least 101 members, and over $5 million is in controversy (exclusive of interest and costs). (Doc. No. 1 at ¶¶ 18, 21, 48.) The only issue before the court regarding these three requirements is the amount in controversy. More precisely, plaintiff argues that defendant "relies on unexplained, unsupported and unreasonable assumptions," which amounts to a failure by defendant to meet its burden of proof. (Doc. No. 12 at 7.) For reasons explained below, the court concludes that defendants have met their burden of establishing, by a preponderance of the evidence, that the amount in controversy as to plaintiff's claims exceeds the jurisdictional minimum.

        1.     <u>Sufficiency of the Lesien Declaration</u>

Defendant supports its challenged amount in controversy calculation with the declaration of its Human Resources Director Scott Lesien. Plaintiff argues that the Lesien Declaration is inadequate evidentiary support for defendant's calculations because it fails to offer specific facts, such as the precise number of times various violations occurred, despite defendant's possession of time records. (Doc. No. 12 at 7–9.) However, the Ninth Circuit has warned district courts that demanding certitude over "assumptions used in calculating the amount in controversy" is "inappropriate." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993–94 (9th Cir. 2022) (cautioning against turning "the CAFA removal process into an unrealistic all-or-nothing exercise of guess-the-precise-assumption-the-court-will-pick" when "the defendant provided substantial evidence and analysis supporting its amount in controversy estimate."). District court decisions since *Jauregui* have struck "a more lenient tone . . . regarding the sufficiency of

4

declarations to support amount-in-controversy analyses." *Demaria v. Big Lots Stores - PNS, LLC*, No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *4 (E.D. Cal. Sept. 29, 2023); *see also Rios v. Magellan HRSC, Inc.,* No. 2:22-cv-01219-KJM-AC, 2022 WL 5241292, at *1 (E.D. Cal. Oct. 6, 2022) (denying a motion to remand where the amount in controversy calculations were drawn from a declaration of the defendant's vice president who was familiar with the company's payroll records). Because the Lesien Declaration provides significant information from employment records and explains methods of calculation, the court finds it sufficient to support defendant's amount in controversy analysis, even though plaintiff has identified information that is not detailed within that declaration.

        2.        <u>Unpaid Meal Period Premiums</u>

Plaintiff alleges that defendant engaged in the practice of rounding meal period times and from time to time failed to provide all of the legally required off-duty meal breaks. (Doc. No. 1-1 at 6, 36.) She also alleges that the rigorous work schedules meant employees were at times not fully relieved of all their duties for the legally required off-duty meal periods, and on some workdays had to forfeit meal breaks entirely. (*Id.* at 36.) The limiting language suggests that this may have been a sporadic rather than regular failing. As such, defendant accounts for this language by proffering an amount in controversy for unpaid meal periods assuming a 24% violation rate.[1] (Doc. No. 11 at 17.) Defendant uses this rate, reflecting one missed meal period per week for both full-time and part-time employees, as well as the numbers of those employees employed during the relevant period and the average hourly pay rates as declared by Lesien, to allege that meal period violations alleged put $473,040.90 into controversy in this action. (*Id.*) Plaintiff responds by arguing that defendant has not reviewed actual time records and put forth facts to support the violation rate employed in its calculation. (Doc. No. 12 at 7–9.)

At the outset, the court notes that a defendant is not "required to comb through its records to identify and calculate the exact frequency of violations." *Lopez v. Aerotek, Inc.*, No. 14-cv-

---

[1] The court finds that defendant's proffered violation rate is slightly higher, as taking a weighted average of 99 full-time employees at a 20% violation rate and 148 part-time employees at a 29% violation rate produces an average violation rate just over 25%. However, this difference does not change the analysis here.

5

00803-CJC, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015). "[C]ourts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when a plaintiff claims a 'pattern and practice' of violations." *Sanchez*, 2021 WL 2679057 at *4; *see also Hender v. Am. Directions Workforce LLC,* No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *6 (E.D. Cal. Oct. 8, 2020) (finding a 20% violation rate to be reasonable when the plaintiff claimed a policy and practice of denying employees meal breaks); *Olson v. Becton, Dickinson & Co.*, No. 19-cv-00865-MMA-BGS, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate to be appropriate); *Johnson v. Bamia 2 LLC*, No. 2:22-cv-00548-KJM-AC, 2022 WL 2901579, at *3 (E.D. Cal. July 22, 2022) (adopting defendant's estimate using a 40% violation rate); *Elizarraz v. United Rentals, Inc.*, 2:18-cv-09533-ODW-JC, 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (using a 50% violation rate for a meal period claim); *Bryant v. NCR Corp.,* 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (using a 60% violation rate for a meal period claim); *Alvarez v. Off. Depot, Inc*., No. 17-cv-7220-PSG-AFM, 2017 WL 5952181 (C.D. Cal. Nov. 30, 2017), at *3 (same). Given that plaintiff has alleged a pattern and practice of meal violations, the court finds defendant's "blended violation rate" to be reasonable, within the range and even on the low end of what would be acceptable. (Doc. No. 11 at 26.) Thus, when used in combination with the numbers of employees and average wage rates reflected in the Lesien Declaration, defendant has carried its burden of demonstrating that over $473,000 is in controversy with respect to the alleged unpaid meal periods.

   3. <u>Unpaid Rest Period Premiums</u>

Plaintiff pleads that employees were from time to time required to work in excess of four hours without being provided ten-minute rest periods. (Doc. No. 1-1 at 37.) She also alleges that defendant had a policy of restricting employees from leaving the work premises or taking unconstrained walks during their rest periods. (*Id*. at 7.) Defendant again proposes an estimate presuming that each employee experienced one such violation per week, which puts $768,248.75 into controversy. (Doc. No. 11 at 24.) By the court's calculation, this amounts to a violation rate

/////

/////

of 34.5%.[2]  In reply, plaintiff argues that defendant makes unsupported assumptions and does not offer facts such as "[h]ow many class members missed rest periods," despite the fact that the time records are in defendant's possession.  (Doc. No. 12 at 7.)

Again, the court notes that a defendant is not required to identify an exact frequency of violations for the purposes of calculating the amount in controversy.  *Sanchez*, 2021 WL 2679057, at *4.  Given that plaintiff alleges a policy of interference with rest periods, the court finds defendant's proposed rate to be reasonable.  *See id.* (finding a 20% violation rate reasonable where the plaintiff alleged a pattern and practice of denying employees rest breaks); *Hender*, 2020 WL 5959908, at *6 (same); *Olson*, 2019 WL 4673329, at *4 (finding a 25% violation rate to be appropriate); *Elizarraz*, 2019 WL 1553664, at *3–4 (using a 30% violation rate for rest period claim); *Bryant,* 284 F. Supp. 3d at 1151 (same); *Johnson*, 2022 WL 2901579, at *3 (adopting defendant's estimate using a 40% violation rate).  This rate in combination with the facts set forward by Mr. Lesien establishing the categories of employees and their pay rates is sufficient to demonstrate that plaintiff's rest period allegation puts another $768,248.75 into controversy.

### 4. Waiting Time Penalties

In her complaint, plaintiff also brings a claim for failure to pay wages when due under California Labor Code §§ 201–03.  (Doc. No. 1-1 at 41–42.)  Plaintiff seeks thirty days of pay as a penalty for not paying all wages due at the time of termination.  (*Id.* at ¶ 113.)  In its notice of removal, defendant first calculated that this would amount to approximately $2.42 million being in controversy in this case, accounting for 451 class members and plaintiff's typical shift length of eight hours with a rate of $22.39 per hour.  (Doc. No. 1 at ¶ 120.)  Plaintiff challenged this calculation, arguing that the number of class members and the assumptions that all of them are owed thirty days of penalties and that each of them would have worked 8 hours per day are

---

[2] The court conducted a weighted average using 670 as the number of total employees, with the 99 full-time employees experiencing a violation during one out of every five weekly shifts, the 423 part-time associates experiencing a violation during one out of every 2.5 weekly shifts, and the 148 part-time leads experiencing a violation during one out of every 3.5 weekly shifts. According to Lesien's declaration, during the relevant period full-time employees worked an average of five shifts per week, while part-time associates worked on average 2.5 shifts per week and part-time leads worked on average 3.5 shifts per week. (Doc. No. 11-1 at ¶ 12.)

unfounded.  (Doc. No. 10-1 at 23.)  Defendant then updated its calculation in its opposition to plaintiff's motion to remand, clarifying that of the 451 potential class members, 77 worked full-time during the period in question, 266 worked as part-time associates, and 108 worked as part-time leads.  (Doc. No. 11 at 29.)  In its updated calculation, defendant factors in average shift length and average hourly wage for each of these categories of workers and uses the actual number of days of unpaid wages for each worker, rather than assuming the maximum of thirty.  (*Id.*)  The figures used for this calculation come again from the declaration of defendant's Human Resources Director Scott Lesien.  (Doc. No. 11-1 at 5.)  In reply, plaintiff argues that defendant's updated calculation is still incorrect because it assumes that "100% of the 451 former employees in the putative [c]lass are entitled to the maximum 30-days of waiting time penalties."  (Doc. No. 12 at 11.)

The court finds plaintiff's argument in this regard to be unpersuasive, noting that defendant did identify that "two of the 451 former employees were owed less than 30 days of waiting time penalties" and purports to have included that in its calculation.  (Doc. No. 11 at 29.)  As to the other 449 employees, the court notes that plaintiff seeks the full thirty days of pay as penalty for defendant's failure to pay all wages due at the time of termination for all employees who terminated employment during the class period.  (Doc. No. 1-1 at 42.)  Thus, defendant need not produce extra evidence to convince the court that using the maximum of thirty days is reasonable.  *See Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days, Defendant need not produce evidence, and it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Gonzalez v. Comenity Cap. Bank*, No. 1:19-cv-00342-AWI-EPG, 2019 WL 5304924, at *5 (E.D. Cal. Oct. 21, 2019) (holding that the court may consider the maximum statutory penalty because the plaintiff sought the statutory maximum in the pleading); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same).

Further, recovery of waiting time penalties does not hinge on the number of violations committed; rather the defendant "need only have caused and failed to remedy a single violation

8

per employee for waiting time penalties to apply." *Demaria*, 2023 WL 6390151, at *7 (quoting *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.,* No. 19-cv-0839-DOC-SP, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019)). Given defendant's reasonable assumptions regarding the previously discussed violations, it is also "reasonable to assume that all or nearly all employees in the class would be entitled to recovery of waiting time penalties." *Demaria,* 2023 WL 6390151, at *7; *Cavada v. Inter-Continental Hotels Grp.*, No. 19-cv-1675-GPC-BLM, 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate . . . is based on a reasonable assumption"); *Noriesta*, 2019 WL 7987117, at *6 (holding that if the "[d]efendant had a 'pattern and practice' of refusing to grant meal and rest breaks . . . then it is likely that all or nearly all class members experienced [waiting time] violations")). Therefore, the court can accept defendant's calculation that $1,361,199.70 is in controversy from waiting time penalties.

        5.      <u>Failure to Provide Accurate Itemized Wage Statements</u>

Plaintiff's sixth cause of action alleges that, as a result of defendant's policy leading to missed meal and rest breaks, defendant failed to provide employees with accurate wage statements. (Doc. No. 1-1 at 39.) "Under California law, for an employer's failure to provide accurate wage statements, an employee may seek penalties of $50 for the initial pay period in which a violation occurred and $100 for each subsequent pay period with a violation, not to exceed an aggregate of $4,000 per employee." *Nunes*, 2019 WL 4316903, at *3 (citing Cal. Lab. Code § 226(e)).

To calculate the potential amount in controversy for this claim, Mr. Lesien first determined the number of class members that worked during the relevant one-year limitations period to be 298. (Doc. No. 11-1 at 5.) He then split these class members into two categories: those who worked more than 41 pay periods and thus would be eligible for the maximum penalty of $4,000, and those who did not. (*Id.* at 6.) He provided an example for how he calculated the possible penalty for an employee not eligible for the maximum, before concluding that the amount in controversy as to wage statement penalties for all of the employees during this period is $785,250. (*Id.*)

9

In her pending motion to remand, plaintiff responded arguing that her complaint only vaguely alleged inaccurate wage statements "from time to time," whereas defendant has assumed a 100% violation rate by calculating penalties for all class members. (Doc. No. 10-1 at 21.) Plaintiff cites cases cautioning against the use of "a 100% violation rate in the absence of specific proof." *Arango v. Schlumberger Tech. Corp.*, No. 20-cv-01998-DOC-JDE, 2020 WL 7388425, at *2 (C.D. Cal. Dec. 16, 2020); *see also Melead v. TVI, Inc.,* No. 20-cv-01224-CJC-ADS, 2020 WL 5407456 (C.D. Cal. Sept. 9, 2020) (finding that the allegations of the complaint did not support a 100% violation rate). In its opposition to the pending motion, defendant argues that courts in this district have found 100% violation rates to be appropriate depending on the other allegations in the complaint, because wage statements claims are "derivative" of meal or rest period violations. (Doc. No. 11 at 28) (citing *Bell v. NuSil Tech. LLC*, No. 1:20-cv-00061-NONE-JLT, 2021 WL 1208013, at *4, n.6 (E.D. Cal. Mar. 31, 2021).)

The court finds a 100% violation rate to be appropriate here. As discussed previously, it is reasonable to assume weekly violations for both the meal and rest period claims. Further, defendant "has paid and continues to pay its employees on a weekly basis." (Doc. No. 11-1 at 5.) Thus, it follows that "every wage statement was non-compliant." *Gipson v. Champion Home Builders, Inc.,* No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020); *see also Cavada*, 2019 WL 5677846, at *8 (*citing Nunes*, 2019 WL 4316903, at *3 (finding that a "100 percent violation rate is reasonable" for inaccurate wage statements after reasonably assuming that the class members suffered at least one violation of meal or rest breaks per pay period)). The court thus accepts as reasonable defendant's assertion that $785,250 is in controversy due to wage statement penalties calculated using the dates of employment for the 298 class members at issue. (Doc. No. 11-1 at 6.)

    6.   Failure to Pay Overtime Wages

Plaintiff's third cause of action is for failure to pay overtime compensation under California Labor Code § 510. (Doc. No. 1-1 at 32.) Plaintiff alleges in her complaint that defendant elected to not pay employees for their labor as a matter of company policy, practice, and procedure and implemented a policy and practice that failed to accurately record overtime

worked which denied accurate compensation to employees. (*Id.* at 33–35.) In its opposition to the pending motion to remand, defendant calculates the potential amount in controversy for this claim by multiplying the number of full-time class members during the relevant period (99) by the number of weeks worked in that period (11,722) and the average overtime rate for this group of employees ($40.47 per hour). (Doc. No. 11 at 21.) The figures used were attested to by Human Resources Director Lesien in his declaration. (Doc. No. 11-1 at 3.) Defendant also uses an estimate of one hour of unpaid overtime per week. (Doc. No. 11 at 21.) In her reply, plaintiff contests defendant's assumption that "every single one of 99 full-time class members worked eight hours or more in a shift during every single of the 11,722-week statutory period and is entitled to overtime." (Doc. No. 12 at 10.) In support of this argument, plaintiff cites a decision by another judge of this court where the defendant's assumption of one hour of unpaid overtime per week was rejected. *Contreras v. J.R. Simplot Co.,* No. 2:17-cv-00585-KJM-EFB, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017).

      The court finds defendant's estimate of one hour per week to be reasonable. The decision in *Contreras* is easily distinguished on this point, since in that case the plaintiff had not alleged a policy or practice of overtime violations, and thus there was a lack of corroborating evidence to support the violation rate chosen. (*Id.*) However, courts in this district have since found that "a 20% violation rate (one unpaid overtime hour per week)" is "a reasonable and 'conservative estimate'" when the "plaintiff alleges a 'policy and practice' of failing to pay overtime wages," especially in the absence of any "contrary evidence." *Sanchez*, 2021 WL 2679057, at *5 (quoting *Hender*, 2020 WL 5959908, at *8). Therefore, based on the allegations of plaintiff's complaint, the figures in Mr. Lesien's declaration, and the lack of any contrary evidence, the court accepts defendant's estimation that $474,355.59 is in controversy in connection with the alleged unpaid overtime. (Doc. No. 11 at 21.)

      7.    <u>Unpaid Minimum Wages</u>

      Plaintiff's second cause of action is for failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, 1197.1. Plaintiff alleges that defendant maintained a wage practice of paying employees without regard to the correct amount of time they worked. (Doc.

11

No. 1-1 at 30.) In its opposition to the pending motion to remand, defendant calculates the potential amount in controversy for this claim by using only the number of part-time employees that Mr. Lesien identified as having worked during the relevant period, so as to not potentially duplicate recovery for full-time workers who could recover overtime wages as detailed above. (Doc. No. 11 at 21.) Defendant then multiplies each category of part-time workers by the number of weeks worked in the statutory period and their average hourly rates. (*Id*. at 21–22.) With an estimated one hour of unpaid minimum wages per week, this amounts to $452,011.69. (*Id*. at 22.) In her reply, plaintiff did not specifically respond on the issue of defendant's unpaid minimum wage calculation. (Doc. No. 12.)

The court again finds defendant's estimate to be reasonable. "[C]ourts in this district have found an assumption of one hour of unpaid minimum wages per employee per workweek . . . to be reasonable . . . when a plaintiff alleges a policy or practice on the part of defendants." *Demaria*, 2023 WL 6390151, at *6; *see also Cabrera v. S. Valley Almond Co., LLC,* No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585 (E.D. Cal. Dec. 16, 2021) at *8 (accepting the defendant's assumption of one hour of unpaid minimum wages per week as consistent with allegations in the complaint that the Labor Code violations at issue are due to "policies and/or practices" on the part of the defendants). Given the allegations in the complaint and the lack of any contrary evidence, the court finds that defendant has satisfied its burden of demonstrating that the category of unpaid minimum wages puts at least another $452,000 into controversy in this case.

8. <u>Attorneys' Fees</u>

So far, the claims for unpaid meal and rest periods, waiting time penalties, wage statements, overtime wages, and minimum wages amount to $4,314,106.63 in controversy in this action.[3] While this amount alone would clearly be insufficient to meet the $5 million minimum amount in controversy requirement under CAFA, attorneys' fees may also be appropriately included in determining the amount in controversy. (Doc No. 1-1 at 10, 45, 47; *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018)). The benchmark for class action

---

[3] $473,040.90 + $768,248.75 + $1,361,199.70 + $785,250 + $474,355.59 + $452,011.69 = $4,314,106.63.

attorneys' fees in the Ninth Circuit is 25%, "with 20-30% as the usual range." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).

In its notice of removal and again in its opposition to the pending motion to remand, defendant includes an estimate of attorneys' fees in the amount of 25% of the total amount in controversy. (Doc. No. 1 at ¶ 132; Doc. No. 11 at 34.) In response, plaintiff argues that the court must disregard attorneys' fees as unreliable because the underlying "damages and penalties are based on unsupported assumptions." (Doc. Nos. 10-1 at 25; 12 at 12.) Plaintiff cites cases rejecting inclusion of 25% in attorneys' fees, but those were all cases in which the court had taken issue with the defendant's previous, underlying calculations. *See Garibay v. Archstone Cmtys. LLC,* 539 F. App'x 763, 764 (9th Cir. 2013) (rejecting 25% in attorneys' fees where the defendant had not established that the underlying amount upon which the fee would be based was at least $4 million); *Campbell v. Vitran Express, Inc.,* No. 10-cv-04442 RGK-SH, 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) (concluding that including 25% in attorneys' fee would not necessarily place the amount in controversy over the CAFA threshold due to uncertainty surrounding the defendant's calculation of damages and penalties). In contrast, here the court has found defendant's running estimate of damages and penalties, summing to $4,314,106.63, to be both reasonable and supported. Thus, attorneys' fees in the amount of $685,893.38, or just under 15.9%, would be sufficient to meet the amount in controversy requirement under CAFA. Indeed, it is reasonable to assume that attorneys' fees would exceed 16% in this case should plaintiff prevail. *See Demaria,* 2023 WL 6390151, at *7 (finding the amount in controversy satisfied when other categories of damages reached $4,485,622.74, and only $514,377.27 of attorneys' fees, or about 11.5%, would be needed to reach the threshold). Thus, the defendant has carried its burden of demonstrating that at least $5 million is in controversy in this action, satisfying the jurisdictional minimum.

9. <u>Unreimbursed Expenses and Failure to Pay Wages Timely during Employment</u>

Because the amount in controversy is satisfied by the above categories of damages, the court need not address the parties' arguments regarding additional amounts in controversy stemming from plaintiff's other causes of action.

**B.      Federal Question Jurisdiction**

The court finds federal jurisdiction to be satisfied under CAFA due to the parties being minimally diverse, the class containing over 100 members, and the amount in controversy requirement being satisfied. Consequently, the court need not, and therefore does not, address the parties' arguments regarding the presence or absence of federal questions in the claims asserted in plaintiff's complaint.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to remand (Doc. No. 10) is denied.

IT IS SO ORDERED.

Dated:   **December 19, 2023**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

14